[Civ. No. 21915. Second Dist., Div. One. Dec. 31, 1956.]

WHITTIER ELEMENTARY SCHOOL DISTRICT OF LOS ANGELES COUNTY, Respondent, v. ROBERT C. KIRKWOOD, as State Controller, etc., Appellant.

Edmund G. Brown, Attorney General, and Richard L. Mayers, Deputy Attorney General, for Appellant..

Harold W. Kennedy, County Counsel, and Wm. E. Lamoreaux. Assistant County Counsel, for Respondent.

FOURT, J.—This is an appeal by the defendant from a judgment in an action in declaratory relief brought to determine the authority of the State Allocation Board to amend an order apportioning funds from the Public School Building Loan Fund so as to permit the respondent school district to retain the proceeds from the sale of a replaced school site, instead of applying such proceeds toward the repayment of the state allocation, as set forth in the resolution initially approving such allocation.

On about June 5, 1950, respondent, pursuant to the provisions of chapter 1.6 of division 3 of the Education Code, filed a written application with the State Allocation Board for an allocation of $2,689,632.70, for the acquisition and construction of certain school facilities set forth therein. The electors of the respondent district, at an election, had authorized the board of trustees of the district to accept and expend an apportionment from the state in an amount not to exceed $3,250,000, pursuant to the law.

On or about January 9, 1951, the State Allocation Board, by Resolution numbered 1389-106, approved an allocation of $2,452,472, for the purposes set forth in the application. By this resolution the respondent district was required to contribute to the costs of the contemplated school project "the net proceeds or credits allowed from the disposition of any sites, improvements, or facilities sold, transferred, or exchanged as a result of the acquisition or construction of any sites, improvements, or facilities pursuant to Chapter 1.6. . . ." The resolution further provided: "That the District shall proceed to dispose of any school building area in excess

of the maximum prescribed by Paragraph 2 of this resolution, and any site or sites scheduled to be abandoned as a result of the acquisition or construction of any sites, improvements or facilities pursuant to Chapter 1.6 above, not later than the date the new construction authorized by this resolution is available for occupancy, provided that the terms, conditions and manner of disposition thereof shall be subject to the approval of the Director of Finance, and provided further that if such excess area or sites have not been disposed of by said date, the District shall dispose of the same in accordance with the instructions of the Director of Finance.''

On or about January 20, 1953, the respondent district requested permission to sell the real property owned by the district, known as the Jonathan Bailey School and site, and to retain the proceeds therefrom ''to be used for the construction of additional classroom facilities in accordance with the needs of the District.''

On or about December 16, 1953, the State Allocation Board adopted Resolution Number 1389-106V, which amended Resolution Number 1389-106, in that it deleted from the original resolution the requirement that the respondent school district contribute to the cost of the specific project as approved the net proceeds obtained from the disposition by the district of any sites, improvements, or facilities sold, transferred, or exchanged. Said resolution further purported to authorize respondent district to sell the Jonathan Bailey School and site for not less than $253,600, and to apply the net proceeds obtained from said sale toward providing or constructing additional but unspecified school facilities.

On or about April 26, 1954, the attorney general advised the appellant that the State Allocation Board had no authority to amend the original resolution and that such purported amendment was invalid. About September 8, 1954, the respondent district entered into an agreement with the city of Whittier for the sale of the school site for the sum of $253,600.

The attorney general, in his brief, sets forth that on October 27, 1954, the State Allocation Board adopted Resolution numbered 1389-106X, which said resolution apparently took notice of the fact that the attorney general had been requested by the Chief of the Local Allocation Division to reconsider his opinion of April 26, 1954. Further, it is said that by this resolution the approval of the State Allocation Board, in allowing the respondent district to retain the proceeds

from the sale of the Jonathan Bailey School and site was specifically made subject to the approval of the attorney general. The respondent district points out that this particular Resolution (1389-106X) was never received in evidence.

On or about November 12, 1954, the attorney general reaffirmed his previous opinion. On January 12, 1955, by Resolution numbered 1389-106Y, the State Allocation Board, after taking notice of the opinions of the attorney general, reaffirmed its previous position. In this latter resolution there is contained the following:

"2. That Paragraph 2 to-wit: 'That the approval of the Board, allowing the District to retain the proceeds from the disposition of the Jonathan Bailey School and site, is subject to approval of the Attorney General of the State of California', of Resolution No. 1389/106X, adopted October 27, 1954, is hereby rescinded."

Thereafter, the appellant demanded that the entire sum received, or to be received, by the respondent district from the sale of the Jonathan Bailey School and site be paid to the State of California, and in his demand stated that if said sums were not paid, that the State Controller would deduct the same from the yearly allotments of state funds to the respondent school district.

Some of the pertinent, relevant provisions of the law involved are as follows: Section 5048 of the Education Code as it read in 1950, and as it now reads, authorizes school districts to file applications for state apportionments with the State Allocation Board, and requires that board to approve or reject the application.

Section 5050 of the Education Code requires that before an allocation becomes final 95 per cent of the bonded capacity of a school district be outstanding, or if not, that the outstanding bonds be within $25,000 of the total bond limit. The section then provides as follows:

"At the time the board makes a conditional apportionment pursuant to Section 5048, it shall determine what portion of the total amount of bonds which a district is permitted to issue and sell by law shall be issued and sold by such district, the proceeds of which shall be applied toward the cost of the project for which the apportionment is sought. The portion so determined by the board shall be not less than the minimum amount required for such apportionment to become final under this section."

The section also requires the electors of the school district,

by a two-thirds vote, to authorize the governing board of the district "to accept, expend, and repay, as provided in this chapter, an apportionment under the provisions of this chapter." As heretofore indicated, such an election was held in the respondent district and authorized the governing board to accept, expend and repay an amount not to exceed $3,250,000.

A complete scheme of repayment to the state of apportionments made, with interest, over a period of years is provided by section 5053 to 5063 of the Education Code, section 5059 providing that interest shall cease after twenty-five years and at the end of 30 years any unpaid balance of an apportionment shall be cancelled. Section 5058 provides for the disposition of the repayments as follows:

"5058. The State Controller shall, during the next fiscal year following that in which he determines the annual repayment as herein provided, deduct the total amount of the annual repayment of each district in equal amounts from each installment of the apportionments made to such district from the State School Fund under Chapter 15 of this division; and, on order of the State Controller, the amount so deducted shall be transferred to the Public School Building Loan Fund. All money transferred to the Public School Building Loan Fund under the provisions of this section shall be available only for transfer to the General Fund under the provisions of Section 5103."

Other than as provided in the above referred to sections, there is no provision, so far as we are able to locate, requiring school districts to apply any other funds, either available at the time of the application or to become available from the sale of assets, toward the construction project or as a reduction or repayment of the apportionment, nor is there any provision in any of the sections requiring the State Allocation Board to include such provisions in the granting of the apportionment, this matter resting wholly within its discretion.

Pursuant to its rule-making power, the State Allocation Board adopted, among others, two rules as follows: Rule 1778 provides that at the time of making an apportionment the State Allocation Board shall prescribe the amount of funds to be contributed by the district toward the construction project, and in determining the amount of available funds may specify that proceeds from the sale of any facilities to be replaced through an apportionment shall be applied toward the cost of the construction project as such proceeds become available. Thus, by its own rule, the board has discretion to

require the proceeds from the sale of facilities to be used toward the project.

Rule 1781 provides, so far as material, as follows: "Notwithstanding anything to the contrary in these rules and regulations, the Board shall have power:

. . . . . . . . . . . . . .

"(c) To modify any apportionment or resolution of apportionment, either conditional or final, where the Board determines that good cause exists therefor.

"This section shall apply to any apportionment or resolution of apportionment heretofore or hereafter made or adopted by the Board."

The respondent has pointed out that under section 5058 of the Education Code it is required that the State Controller deduct the amount of annual repayments of each district from the apportionments made to such district from the State School Fund and to transfer the amount so deducted to the Public School Building Loan Fund and from there to the General Fund under the provisions of section 5103. The latter section provides for the accumulation of money to retire the state school bonds. Thus, should the appellant deduct the amount here involved from the regular yearly state apportionment to respondent district, it would eventually come to rest in the General Fund and would not be available for an allotment to any other school district.

The only provisions we have been able to locate providing for reimbursing the Public School Building Loan Fund after an allocation has been made to a school district are when the money allocated has been expended for unauthorized purposes, or is in excess of the final cost of the project, under section 5071 of the Education Code; when any unexpended portion of an allocation remains after three years has expired, section 5072 of the Education Code; and when a school site acquired with money allocated is sold within three years, section 5073 of the Education Code. The money in question in the instant case does not fall within any of the categories named.

The respondent also points out that the Legislature, in the 1955 session amended section 5048 by adding thereto, among other things, the following:

"The board may for such good cause as it shall determine, reduce the amount of, or modify any provisions relating to, any contribution required of a school district under the terms of an apportionment, other than any contribution required

of such district under Section 5050 from the sale of bonds; provided, that the board may not, without the consent of the district, increase the amount of any district contribution under the terms of an apportionment, in the absence of mistake arising from any source, or misrepresentation, concealment, or omission, on the part of the district, intentional or otherwise. *The provisions of this paragraph shall be applicable to apportionments heretofore or hereafter made.*" (Emphasis added.) (Stats. 1955, ch. 1734, § 3.)

It would appear therefore, that the Legislature validated the actions of the State Allocation Board.

The trial judge in this matter prepared an opinion in writing wherein he set forth his reasoning and the law of the case. We believe the cause was correctly and properly disposed of in the trial court and we adopt as part of this opinion the memorandum opinion of the trial court which is as follows:

"The sole question for determination in this case is the authority of the State Allocation Board to amend an order apportioning funds from the Public School Building Loan Fund, so as to permit the plaintiff school district to use the proceeds from the sale of a replaced school site for the construction of additional school buildings, instead of applying such proceeds toward the repayment of the allocation as originally provided in the resolution approving such allocation.

"It is clear that the school building aid program embraced in article 1, chapter 1.6, division 3 of the Education Code is to provide necessary and adequate school sites and buildings for financially distressed school districts.

"While the act (§ 5048) requires the Director of Finances to determine the district's financial ability to meet all or a portion of the cost out of available funds, there is no provision in the act which requires the board to compel the district to contribute any of its available funds or funds which thereafter become available, except in the case of a sale within three years of a site or improvements purchased or improved in whole or in part from an apportionment (§ 5073).

"Rule 1778 adopted by the board, pursuant to authority of Section 5045, provides that the board *shall* prescribe the amount of funds to be contributed by the district and *may* specify that the proceeds from the sale of any facilities to be replaced through an apportionment shall be applied toward the cost of the approved project.

"In the first instance then, it is within the board's discretion to determine if proceeds from the subsequent sale of replaced facilities shall be applied toward the cost of the project.

"Rule 1781 provides that the board may modify any apportionment, conditional or final, where the board determines that good cause exists therefor. With no statutory provision relating to the use of funds subsequently becoming available from the sale of replaced facilities, and with authority to modify an apportionment for good cause, it would appear that the board has authority to modify the provision of an apportionment requiring the district to contribute the net proceeds from the disposition of any replaced facilities by excepting therefrom the net proceeds acquired by the district from the sale of a particular school and site.

■ "The attorney general contends that both the statute and the board rules require the district to make use of all its available funds before obtaining state aid. This contention is not supported by any provision of the statute or by the board rules.

"The attorney general further contends that by modifying the apportionment provision relating to the contribution of proceeds from the sale or replaced facilities, by exempting the proceeds from the sale of one site and improvements, the board has in effect approved the use of such proceeds for a project without first requiring the district to apply for an apportionment of such sum in the manner prescribed by law. ■ The fallacy of this contention is that the board is not required by law, nor by its own rules to require such contribution in originally approved apportionment. An expenditure of the district's funds subsequently becoming available is not an allocation from the Public School Building Loan Fund.

■ "It is a further contention of the attorney general that to permit the plaintiff to retain and use the proceeds received from the sale of replaced facilities subverts the entire statutory scheme envisaged in the State Building Aid program in that it would render completely ineffectual the priority system contained in the act. Section 5044.5 provides that the board shall by rule give priority in allocating funds to districts where the children will benefit most from additional facilities. After setting forth the several bases for priority, the section provides that the board may make exceptions when it determines that it will be for the benefit of the children affected. Thus it appears that even a waiver of

priority is within the discretion of the board and not in conflict with the enabling statute.

 ''We conclude that the board was authorized to amend the original resolution by the adoption of the resolution of December 16, 1953, authorizing the district to sell the Jonathan Bailey School and site and to apply the proceeds to the construction of the facilities specified in the amendatory resolution.''

Judgment affirmed.

White, P. J., and Doran, J., concurred.